OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendant has moved to dismiss this indictment pursuant to CPL 30.20 and 30.30.
*956 On December 8, 1988, a felony complaint was filed against defendant in Criminal Court which was subsequently dismissed, according to the District Attorney’s representations, without prejudice, on February 6, 1989. On April 28, 1989, an indictment was filed charging that defendant, together with his brother Dallas Brooks and one Anthony Dunn, also known as Brown, committed acts on December 6, 1988, constituting robbery in the second degree, grand larceny in the fourth degree and criminal possession of stolen property in the fifth degree. As there was, at that time, no proceeding pending against the defendant and the indictment was a "silent” or "X” indictment, on May 2, 1989, a warrant was issued for defendant’s arrest without any other or prior notice to him requesting that he appear in court for arraignment. The People concede that the time between the filing of the felony complaint on December 8, 1988, and the filing of the indictment in this court on April 28, 1989, a total of 142 days, is chargeable to them for speedy trial purposes. (See, People v Osgood, 52 NY2d 37 [1980]; People v Lomax, 50 NY2d 351 [1980].)
Defendant was first returned on the warrant, following his arrest, on September 26, 1990, or 657 days after the filing of the felony complaint in Criminal Court on December 8, 1988, a period far in excess of the six months mandated by CPL 30.30 (1). Although the defendant had not yet been arraigned, and nearly two years had elapsed since the date of the crime, the People claimed immediate readiness for trial. Having conceded that 142 days are chargeable to the People, the People must demonstrate that at least 474 days are excludable for speedy trial purposes under CPL 30.30 (4) in order to avoid dismissal.
The People are entitled to a reasonable period following indictment to notify the defendant and arrange for arraignment. (People v Pappas, 128 AD2d 556, 558 [2d Dept 1987].) Just how much time is reasonable depends upon the facts of each case. A hearing was held to determine whether the failure to execute the warrant in a more timely fashion was actually caused by defendant’s absence or unavailability or his deliberate attempts to avoid prosecution despite the People’s due diligence, thus warranting the exclusion of the 512 days from the issuance of the warrant on May 2, 1989, to the date of arrest on September 26, 1990. (CPL 30.30 [4] [c].)
Police Officer Dennis Gustaferri testified that he was assigned to execute the warrants for both Mark Brooks and his *957 brother Dallas on May 31, 1989. Following some telephone calls on June 19, 1989, Officer Gustaferri learned that the warrant for Dallas Brooks had been executed and that he was in the Nassau County Jail. His efforts to secure the presence in court of Mark Brooks did not commence, however, until July 5, 1989, when he made his first visit to 79-18 Jamaica Avenue, defendant’s home address. Though no one responded to his knocks, Officer Gustaferri inquired of the building superintendent, as well as local merchants, and determined that the defendant did reside at that address.
On July 12, 1989, responding to a tip from the owner of defendant’s building that defendant was at home, Officer Gustaferri again visited 79-18 Jamaica Avenue. Defendant Mark Brooks was not present, but Officer Gustaferri spoke with his father, Dallas Brooks, Sr., and advised him that a warrant was outstanding for his son’s arrest. Though advised that defendant was not at home, Officer Gustaferri searched the apartment, but did not leave a copy of the warrant, or any other written information concerning the warrant, with Mr. Brooks.
Officer Gustaferri testified that he made some telephone calls concerning Mark Brooks on July 27, 1989, October 26, 1989, and December 7, 1989. These calls were not to defendant’s home, but were made to various governmental agencies. Officer Gustaferri did not check the post office or the Department of Motor Vehicles to verify that defendant resided at 79-18 Jamaica Avenue because he knew that was the correct address and was satisfied from conversations he had with neighbors that defendant did reside there. At no time, however, did Officer Gustaferri or the District Attorney’s office mail a letter or a copy of the warrant to defendant or attempt to communicate with him directly through any other written means, such as leaving a business card with Mr. Brooks’ father. (See, e.g., People v Lugo, 140 AD2d 715 [2d Dept 1988].) Moreover, notwithstanding that Mark Brooks had been represented by counsel before the Criminal Court, the District Attorney made no attempt to contact that attorney to arrange for Mr. Brooks’ arraignment.
Between July 12 and December 19, 1989, no visits were made to defendant’s home. On December 19, 1989, Officer Gustaferri made another visit to defendant’s apartment at 79-18 Jamaica Avenue. Defendant’s grandmother or aunt was present and permitted a search of the apartment, but defen *958 dont could not be found. Again, no written information was left at the home.
On January 29, 1990, Officer Gustaferri made his last visit to 79-18 Jamaica Avenue. Again, he interviewed the same elderly woman whom he identified as defendant’s grandmother and again, defendant was not present.
On February 1, 1990, Officer Gustaferri visited several other prior addresses of the Brooks family. The defendant Mark Brooks could not be identified by persons at those addresses. The owner of a Highland Avenue address where the family resided in 1987 verified that 79-18 Jamaica Avenue had been given as a forwarding address. Having, according to the printout of the Warrant On-Line File System in evidence as People’s I, "exhausted all leads,” Officer Gustaferri concluded his investigation and filed a final report on February 2, 1990.
On September 26, 1990, when Officer Gustaferri accompanied some other officers to 144-03 101st Street in Queens to execute another warrant for defendant’s brother, Dallas Brooks, Mark Brooks answered the door and identified himself. Officer Gustaferri returned to his car and checked to determine whether the warrant for Mark Brooks was still active. Upon determining that it was, he returned to 144-03 101st Street and arrested Mark Brooks.
Both Mark Brooks and his mother, Gloria Brooks, testified that during the pendency of the warrant, Mark Brooks did in fact reside with his parents and a paternal aunt at 79-18 Jamaica Avenue. Gloria Brooks testified that in July 1989 she became aware of a possible warrant for her son Mark’s arrest through neighbors. She had not received any written notice of such warrant, nor had she been visited by police, but, based on her neighbors’ comments, she and her husband Dallas Brooks accompanied Mark, first to the nearest police station on 102nd Avenue, and then, based on instructions given to them at the precinct, to Criminal Court on Schermerhorn Street. Following a computer check by Criminal Court staff, which revealed no outstanding warrant for Mark Brooks, the family came to Supreme Court, at 360 Adams Street, where, again, they were advised that the records did not indicate an outstanding warrant. The court credits this testimony as credible in light of unsuccessful attempts by both my law secretary and my part clerk to locate the Criminal Court file or any record in either Criminal Court or Supreme Court of a warrant history for Mark Brooks or a record of Mark Brooks’ prior appearances in either court.
*959 Mark Brooks testified that he had visited the precinct and both Criminal and Supreme Courts with his parents on July 17 or 18, 1989. He testified further that when the case had been dismissed in Criminal Court on February 6, 1989, the Judge presiding, whose name he did not remember, told him that if he didn’t hear from the court within five months, the case would be over. It is conceded by the People that no written notice of the present indictment was ever provided to Mark Brooks, nor is there any evidence of personal notice to him by telephone or otherwise prior to his arrest. Mark Brooks testified that he never sought to avoid apprehension or prosecution and that he did in fact reside throughout the relevant period in Queens with his parents, at the address known to the police.
CPL 30.30 (4) (c) excludes from the six-month speedy trial period periods of delay resulting from the absence or unavailability of defendant. Specifically, where a defendant has been given prior notice to appear in court and has failed to respond, resulting in the issuance of a bench warrant pursuant to CPL 530.70, the period extending from the issuance of the warrant to the day defendant finally appears is excluded. (See, Bellacosa, 1984, 1982 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 30.30, 1990 Supp Pamph, at 59.) However, as Mark Brooks never received notice to appear in court following the filing of the instant indictment, this provision is inapplicable. (Cf., People v Pappas, 128 AD2d, supra, at 559.)
CPL 30.30 (4) (c) also presumes defendant’s absence “whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence.” However, "the mere allegation of absence or unavailability is not sufficient for the time to be excludable under the statute.” (People v Peterson, 115 AD2d 497, 498 [2d Dept 1985].) The prosecution has the further burden to establish that defendant was attempting to avoid apprehension or that he could not be located despite the exercise of due diligence. (Supra, at 498.) It is this provision of CPL 30.30 (4) (c) by which the merits of the motion to dismiss must be measured.
It is undisputed that the People knew the actual home address of the defendant from the outset. This court has some reservations as to whether it was reasonable to permit over two months to elapse, following issuance of the warrant on *960 May 2, 1989 to July 5, 1989, before visiting defendant’s home. However, it was obviously the second visit to the home and Officer Gustaferri’s conversations with relatives and neighbors on July 12 that alerted defendant to the possibility of a warrant and prompted him to come to court on July 17 or 18. Therefore, this court will give the benefit of the doubt to the People in excluding the 79 days from April 28 to July 18, from the time chargeable to them under CPL 30.30, notwithstanding that the defendant himself sought out the warrant information, clearly indicating that he was not attempting to avoid apprehension or prosecution.
Unfortunately, due to the People’s inadequate efforts to apprise defendant of the particulars of the warrant or of the name or a telephone number of a person who could supply any information, defendant’s efforts to respond proved futile and the warrant remained active. Given defendant’s initiative in attempting to respond, the People have failed to establish either due diligence on its part or any attempt on defendant’s part to avoid apprehension or frustrate prosecution. Therefore, no other period of the 657 days can be properly excluded, leaving the People chargeable with 578 days. (See, People v Taylor, 139 AD2d 543 [2d Dept 1988].)
Even if subsequent efforts, beginning with the December 19, 1989, visit to the defendant’s home and concluding on February 2, 1990, when Officer Gustaferri completed his report indicating that no further efforts to locate defendant were appropriate, are considered diligent under the circumstances, after July 18, defendant had no reason to believe a warrant for his arrest was outstanding and could certainly not be said to be avoiding a prosecution of which he had no knowledge. Excluding this period of 46 days, however, would still leave 532 days chargeable to the People under CPL 30.30.
The motion to dismiss pursuant to CPL 30.30 is granted.
Given the extraordinary delay and defendant’s own thwarted efforts to expedite the prosecution of this case, the motion to dismiss pursuant to CPL 30.20 is also granted in the interests of justice. As observed by Judge Wachtler in People v Osgood (52 NY2d 37, 42 [1980], supra), some of the risks sought to be avoided by speedy trial statutes, especially acute where, as here, a felony complaint has been dismissed and there is exceptional subsequent delay in prosecution, are the loss of witnesses or exculpatory evidence, confusion and uncertainty as to the status of the prosecution and the anxiety and *961 public suspicion which a defendant must suffer. All of these consequences resulted to Mark Brooks from the People’s failure to act responsibly in diligently prosecuting the case against him. (It is noted, in this regard, that the cases against both of the codefendants have long ago been concluded on the merits.)
Accordingly, this court finds that defendant’s constitutional right to a speedy trial as required under CPL 30.20, as well as his rights pursuant to CPL 30.30, have been denied and the motion to dismiss the indictment is granted.